FILED - GR
April 6, 2023 8:40 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: JW 4-6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RICK VERNON JOHNSON,
JOHN DAWOOD DALALY,
BRIAN DENNIS PIERCE, and
VINCENT TYLER BROWN,

    Defendants.
_____/

**1:23-cr-40**
**Jane M. Beckering**
**U.S. District Judge**

**FELONY INFORMATION**

The United States Attorney charges:

**GENERAL ALLEGATIONS:**

At all times material and relevant to this Information:

1. The State of Michigan was a State government that received benefits in excess of $10,000 under a Federal program involving a grant, contract, or other form of Federal assistance in any one-year period.

2. The Medical Marihuana Licensing Board was a government agency of the State of Michigan created by the Medical Marihuana Facilities Licensing Act, Section 301 of Michigan Public Act 281 of 2016, and housed within the Department of Licensing and Regulatory Affairs, a department of the executive branch of Michigan.

3. The Medical Marihuana Licensing Board had all powers necessary and proper to fully and effectively implement and administer the Medical Marihuana Facilities Licensing Act for the purpose of licensing, regulating, and enforcing the licensing and regulation system for marijuana growth, processing, testing, and transporting in the state of Michigan.

4. The Medical Marihuana Licensing Board's duties included, among other things, granting or denying each application for a state operating license within a reasonable time,

deciding all license applications in a reasonable order, and consulting with the Department of Licensing and Regulatory Affairs in promulgating rules for the marijuana industry.

5. Between on or about May 26, 2017, to on or about April 30, 2019, RICK VERNON JOHNSON was a member and the Chairperson of the Medical Marihuana Licensing Board.

6. Under Michigan law governing the Medical Marihuana Licensing Board, JOHNSON was prohibited from having a direct or indirect interest in a licensee or marijuana facility. In addition, for the three years immediately preceding his appointment to the Board, JOHNSON was prohibited from having held any direct or indirect interest in a person licensed to operate under the Medical Marihuana Facilities Licensing Act, or a person with an application pending before the Board or in any other jurisdiction.

7. JOHNSON was required to file annually with the Governor a financial disclosure statement under oath listing all assets and liabilities, property and business interests, and sources of income for himself and his spouse. He was further required to affirm under oath that he was in compliance with the prohibitions against having a direct or indirect interest in any licensee or marijuana facility, or a person with an application for an operating license pending before the Board.

8. BRIAN DENNIS PIERCE was a lobbyist doing business as Philip Alan Brown Consulting, LLC and Michigan Grower's Consultants, LLC.

9. VINCENT TYLER BROWN was a lobbyist doing business as Philip Alan Brown Consulting, LLC and Michigan Grower's Consultants, LLC.

10. COMPANY A was formed with the purpose of obtaining various operating licenses from the Medical Marihuana Licensing Board.

11. COMPANY B was formed with the purpose of exploring the licensing of a digital currency platform for medical marijuana financial transactions.

12. JOHN DAWOOD DALALY operated COMPANY A and COMPANY B.

13. COMPANY C was formed with the purpose of obtaining various operating licenses from the Medical Marihuana Licensing Board.

14. PIERCE and BROWN lobbied on behalf of various businesses seeking operating licenses from the Medical Marihuana Licensing Board, including on behalf of COMPANY C.

15. JBJ Ranch, LLC; VM Enterprises, LLC; and Common Cents Harvest Farms, LLC were entities registered to do business in the State of Michigan. JOHNSON used those entities to accept cash payments, including by COMPANY A, COMPANY B, Philip Alan Brown Consulting, LLC, and Michigan Grower's Consultants, LLC, and to help hide the fact that he was receiving cash payments while he was the Chairperson of the MMLB.

16. A medical marijuana license issued by the Medical Marihuana Licensing Board had a value in excess of $5,000 because it would allow a business to grow, process, test, transport, or sell marijuana in the State of Michigan in compliance with state law in what was a new and highly lucrative market.

17. JOHNSON, while a member and Chair of the Medical Marihuana Licensing Board, provided valuable non-public information about the anticipated rules and operation of the Board and assistance with license application matters to representatives of COMPANY A, COMPANY B, and COMPANY C.

18. JOHNSON, COMPANY A, and COMPANY C failed to disclose to the State of Michigan the conflict of interest and ex parte communications between JOHNSON and applicants for medical marijuana licenses, and, to conceal corrupt payments to entities controlled by JOHNSON, COMPANY A and COMPANY C falsely stated on their applications that they had no financial relationship with anyone on the Board.

19. From in or about July 2018 through in or about April 2019, JOHNSON voted in favor of approving the prequalification status of COMPANY A and COMPANY C, and voted in favor of granting medical marijuana licenses to COMPANY A and COMPANY C.

## COUNT 1
### (Accepting a Bribe)

1. The General Allegations contained above are incorporated as though fully set forth herein.

2. From on or about June 8, 2017, through on or about February 13, 2019, in the Southern Division of the Western District of Michigan, and elsewhere, the Defendant,

**RICK VERNON JOHNSON**,

being an agent of a State government and an agency thereof that received benefits in excess of $10,000 under a Federal program involving a grant, contract, or other form of Federal assistance in a one-year period, corruptly accepted, and agreed to accept, things of value, namely, approximately $110,200 in cash and benefits, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the Michigan Medical Marihuana Licensing Board involving a thing of value of $5,000 or more, namely, medical marijuana licenses sought by COMPANY A, COMPANY C, and others.

18 U.S.C. § 666(a)(1)(B)

## COUNT 2
**(Payment of a Bribe)**

1. The General Allegations contained above are incorporated as though fully set forth herein.

2. From on or about January 2, 2018, through on or about February 13, 2019, in the Southern Division of the Western District of Michigan, and elsewhere, the Defendant,

**JOHN DAWOOD DALALY**,

corruptly gave, offered, and agreed to give, and aided and abetted the giving, offering, and agreeing to give, things of value, namely, approximately $68,200 in cash and benefits, to Rick Vernon Johnson, an agent of a State government and an agency thereof that received benefits in excess of $10,000 under a Federal program involving a grant, contract, or other form of Federal assistance in a one-year period, intending to influence and reward Johnson in connection with the business, transaction, or series of transactions of the Michigan Medical Marihuana Licensing Board involving a thing of value of $5,000 or more, namely, medical marijuana licenses for COMPANY A.

18 U.S.C. § 666(a)(2)
18 U.S.C. § 2

## COUNT 3
### (Conspiracy to Commit Bribery)

1. The General Allegations contained above are incorporated as though fully set forth herein.

2. From on or about May 26, 2017, through on or about April 30, 2019, in the Southern Division of the Western District of Michigan, and elsewhere, the Defendants,

**BRIAN DENNIS PIERCE and
VINCENT TYLER BROWN,**

knowingly and voluntarily conspired, confederated, and agreed with each other, and with other persons known and unknown, to commit an offense against the United States, that is, bribery, which is a violation of Title 18, United States Code, Section 666(a)(2).

### OBJECTS OF THE CONSPIRACY

3. One object of the conspiracy was to obtain clients and generate revenue and profits for the members of Philip Alan Brown Consulting, LLC and Michigan Grower's Consultants, LLC by promoting their access to, and ability to influence and reward, Rick Vernon Johnson, an agent of the State of Michigan and the Medical Marihuana Licensing Board.

4. Another object of the conspiracy was to influence and reward Johnson while he was serving as a member and Chairperson of the Medical Marihuana Licensing Board to help their clients, including COMPANY C, obtain medical marijuana licenses from the Medical Marihuana Licensing Board.

### MANNER AND MEANS

5. It was part of the conspiracy that PIERCE, BROWN, and other persons known and unknown, agreed to make payments to Johnson to influence and reward him for providing assistance with, and support for, their clients' applications to the Michigan Medical Marihuana Licensing Board for medical marijuana licenses.

6. It was further part of the conspiracy that PIERCE, BROWN, and other persons known and unknown, used a portion of their client retainer fees to make cash payments to entities controlled by Johnson to influence and reward him for providing assistance with, and support for, applications to the Michigan Medical Marihuana Licensing Board for medical marijuana licenses.

## OVERT ACTS

7. In furtherance of, and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Western District of Michigan and elsewhere:

8. On or about June 8, 2017, PIERCE and BROWN paid Johnson $2,000 by transferring client payments from an account maintained by Michigan Grower's Consultants, LLC to an account maintained by Philip Alan Brown Consulting, LLC, and using some of those funds to send $2,000 to an account maintained by JBJ Ranch, LLC, which was an entity under the control of Johnson.

9. On or about July 27, 2017, PIERCE and BROWN paid Johnson $4,000 in two separate $2,000 payments by transferring client payments from an account maintained by Michigan Grower's Consultants, LLC to an account maintained by Philip Alan Brown Consulting, LLC, and using some of those funds to send $2,000 to an account maintained by JBJ Ranch, LLC and $2,000 to an account maintained by Common Cents Harvest Farms, LLC, which were entities under the control of Johnson.

10. On or about September 11, 2017, PIERCE and BROWN paid Johnson $2,000 by transferring client payments from an account maintained by Michigan Grower's Consultants, LLC to an account maintained by Philip Alan Brown Consulting, LLC, and using some of those funds to send $2,000 to an account maintained by JBJ Ranch, LLC, which was an entity under the control of Johnson.

11.     On or about October 5, 2017, PIERCE and BROWN paid Johnson $2,000 by transferring client payments from an account maintained by Michigan Grower's Consultants, LLC to an account maintained by Philip Alan Brown Consulting, LLC, and using some of those funds to send $2,000 to an account maintained by JBJ Ranch, LLC, which was an entity under the control of Johnson.

12.     On or about December 6, 2017, PIERCE and BROWN paid Johnson $2,000 by transferring client payments from an account maintained by Michigan Grower's Consultants, LLC to an account maintained by Philip Alan Brown Consulting, LLC, and using some of those funds to send $2,000 to an account maintained by JBJ Ranch, LLC, which was an entity under the control of Johnson.

13.     On or about December 20, 2017, PIERCE and BROWN paid Johnson $3,000 by transferring client payments from an account maintained by Michigan Grower's Consultants, LLC to an account maintained by Philip Alan Brown Consulting, LLC, and using some of those funds to send $2,000 to an account maintained by JBJ Ranch, LLC, which was an entity under the control of Johnson.

14.     On or about February 15, 2018, PIERCE and BROWN paid Johnson $4,000 by making a payment from Michigan Grower's Consultants, LLC to an account maintained by JBJ Ranch, LLC, which was an entity under the control of Johnson.

18 U.S.C. § 371

## CRIMINAL FORFEITURE ALLEGATION
### (Accepting a Bribe)

1. The General Allegations and allegations of Count 1 of this Information are hereby re-alleged and incorporated for purposes of alleging criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense in violation of 18 U.S.C. § 666(a)(1)(B), as set forth in Count 1 of this Information, the defendant,

**RICK VERNON JOHNSON,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

3. Money Judgment: A sum of money equal to at least $110,200, which constitutes or is derived from proceeds traceable to the offense charged in Count 1.

4. Substitute Assets: If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(b)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

MARK A. TOTTEN
United States Attorney

Date: April 6, 2023

_____
CHRISTOPHER M. O'CONNOR
CLAY STIFFLER
Assistant United States Attorneys