UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

RICK VERNON JOHNSON,

        Defendant.
_____/

No. 1:23-CR-40

HON. JANE M. BECKERING
United States District Judge

## GOVERNMENT'S RESPONSE OPPOSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Defendant Rick Vernon Johnson has filed a pro se motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release from the federal Bureau of Prisons (BOP). (R.177: Mot., PageID.1970; R.177-3: Mot. Ex. A, PageID.1975-1980.) This Court should deny the motion because Johnson has not met his burden of establishing that there is an extraordinary and compelling reason to grant a sentence reduction. Instead, Johnson seeks the privilege of obtaining what he describes as "top of the line" medical care near his home, family, and friends. He belongs in prison, where he is currently receiving high quality medical attention and treatment from the BOP and the St. Luke's Hospital system in Duluth, Minnesota.

### Background and Relevant Facts

On May 10, 2023, Johnson, the former Chair of Michigan's Medical Marijuana Licensing Board, was convicted of accepting approximately $110,200 in bribes, in

violation of 18 U.S.C. § 666(a)(1)(B). This Court sentenced Johnson to serve 55 months of imprisonment. (R.97: Judgment, PageID.913.) Johnson began serving his sentence on December 1, 2023, and has served approximately nine months of that sentence. His projected custodial release date is in July 2027.

In January 2024, shortly after arriving at Federal Prison Camp Duluth (FPC Duluth), Johnson sought compassionate release from the Warden. (R.177-5, PageID.2017-2018.) Johnson's request recounted only two medical episodes: (1) a coronary artery bypass grafting surgery (CABG) in the fall of 2023, which was successfully completed *before* he reported to BOP; and (2) "internal bleeding," requiring a procedure and blood transfusion at St. Luke's Hospital in Duluth, Minnesota. (R.177-5: Inmate Request to Staff, PageID.2017-2018.) On February 7, 2024, the Warden denied the request, finding that Johnson did not have a "terminal or debilitated" [sic] medical condition. The Warden also noted that Johnson had only served four percent of his sentence and is not eligible for compassionate release due to both age and medical conditions. (R.177-6: Response, PageID.2019.)

Nearly seven months later, on August 14, 2024, and after co-defendant John Dalaly won immediate release from custody on medical grounds over the government's objection, Johnson filed a motion with this Court under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction based on his physical health. Johnson's motion alleges that he: (1) has a serious physical or medical condition that substantially diminishes his ability to provide self-care at BOP and from which he is not expected to recover; and (2) is experiencing a serious deterioration in physical or mental health

2

because of the aging process. (R.177-3, Mot., Ex. A, PageID.1978-1979.) Those barebones allegations are not supported by the record evidence.

Johnson, 71 years old, has a history of morbid obesity, hypertension, hyperlipidemia, and severe obstructive sleep apnea for which he uses a CPAP machine. (R.177-13: Discharge Documents, PageID.2060.) In 2022, Johnson was diagnosed with mild cognitive impairment by Helen Kiomento, M.D. (R.177-13, 1/30/2024 letter, PageID.2076.) Medical records provided by Johnson and the BOP reflect the following relevant medical tests and treatment:

- October 4, 2023: Johnson received a quadruple coronary artery bypass grafting surgery (CABG x4) at Cardiothoracic Surgeons of Grand Traverse after an echocardiogram and elective cardiac catheterization. Johnson tolerated the procedure well. (R.117-13, PageID.2060.) Johnson had a satisfactory surgical recovery, and no additional cardiothoracic surgery was needed. (R.177-13, PageID.2065.)

- December 26, 2023:  BOP Health Services noted that blood chemistry results indicate chronic kidney disease. (Gov. Ex. 1.)

- January 4, 2024: An x-ray of the right hip was obtained by FPC Duluth. No fractures or malalignment found. Minimal osteoarthrosis. A small bony spur was observed. (R.177-16, PageID.2195.)

- January 17, 2024: St. Luke's Hospital Emergency Department conducted a chest x-ray and found clear lungs and no abnormal findings. (R.177-16, PageID.2227.)

- January 18, 2024:  Johnson was diagnosed with a duodenal ulcer at St. Luke's Hospital. The ulcer "was likely secondary to routine NSAID use." The ulcer was clipped, and Johnson received a blood transfusion. (R.177-16, PageID.2213-2215.) (Gov. Ex. 2.)

- January 22, 2024: St. Luke's Cardiac Unit ultrasound found a superficial thrombophlebitis (inflammation of a vein just below skin surface) with otherwise normal findings. (R.177-16, PageID.2226.)

- January 29, 2024:  St. Luke's pulmonary progress note indicates that Johnson's shortness of breath on exertion and chest discomfort may be related to "ongoing hypertension, cardiac disease, deconditioning and obesity." They also noted that he has not been using a CPAP machine to address his severe sleep apnea since his CABG surgery. (Gov. Ex. 3.)

- February 15, 2024:  A chest x-ray was obtained by FPC Duluth. No abnormalities were noted: "No acute cardiopulmonary disease. Stable chest compared to prior exam. Lungs are clear. Previous sternotomy and CABG surgical changes. Heart size within normal limits. No CHF or pulmonary edema." (R.177-16: Final Report, PageID.2192.)

- February 21, 2024:  An echocardiogram was conducted by St. Luke's with no abnormal findings noted. (R.177-16: Echo Lab Results, PageID.2190.)

- March 14, 2024: A GI follow up appointment at St. Luke's found that "Patient is doing well from a GI standpoint." No new evidence of

4

intestinal bleeding. (Gov. Ex. 2.)

- July 2, 2024: Johnson reported to BOP Health Services that he walks 6-8 miles per day on the track. (Gov. Ex. 4.)

- August 7 and 8, 2024: Johnson went to St. Luke's with high blood pressure readings of 201/75 and 241/86. He was discharged with a prescription used to prevent chest pain. (Gov. Ex. 5.)

- August 8 and 9, 2024: BOP searched Johnson's room to confiscate all prescribed medications. BOP Health Services found evidence that Johnson has not been taking his prescribed blood pressure medications as ordered. (Gov. Ex. 6.) "All meds will be changed to pill line based on an email from daughter stating that he gets confused with his medications." (Id.)

Johnson does not require assisted living, nor does he require assistance with self-care, such as bathing, walking, and using the toilet. (R.177-4: Proposed Release Plan, PageID.1985.)

**Legal Framework**

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Absent a specific statutory exception, the district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The district court's authority to modify a sentence is thus "narrowly circumscribed." *United States v.*

5

*Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008); *accord United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001).

Section 3582(c)(1)(A), commonly described as the provision for compassionate release, qualifies as one of the narrow exceptions permitting a sentence modification. Under § 3582(c)(1)(A), district courts may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). The district court may consider a motion under § 3582(c)(1)(A) only if the defendant has exhausted administrative remedies; that is, asked BOP to file such a motion on his or her behalf, and exhausted administrative appeal rights or waited until 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [Section] 3582(c)." 28 U.S.C. § 994(a)(2)(C). Specifically, Congress instructed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria

6

to be applied and a list of specific examples." 28 U.S.C. § 994(t). That instruction represents a delegation of authority to the Sentencing Commission. *See Batterton v. Francis*, 432 U.S. 416, 425 (1977). Such a delegation of authority, however, "is not unlimited." *Id.,* at 428. The Commission may not adopt a reading of the phrase "extraordinary and compelling" that is unreasonable or foreclosed by the statutory text, structure, history, and purpose. *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 53-58 (2011); *see Batterton*, 432 U.S. at 428. The Sentencing Commission in particular "was not granted unbounded discretion"; "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997). For example, Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In 2006, the Commission promulgated Sentencing Guidelines §1B1.13, which is the applicable policy statement for §3582(c)(1)(A) motions. This statement initially referred only to motions filed by the BOP Director because defendants were not entitled to file motions under Section 3582(c)(1)(A) until the enactment of the First Step Act on December 21, 2018. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* Section 3582(c) (2012). Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). In 2022, the Sentencing Commission regained a quorum and promulgated amendments to §1B1.13's policy statement. 88 Fed. Reg. 28,254, 28,254-

28,281 (May 3, 2023); *see also* Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr."). The amendments to §1B1.13 render the policy statement applicable to defendant-filed motions, broaden the Commission's description of categories of extraordinary and compelling reasons for relief, and offer more specific guidance to sentencing courts. *See id*.

As with the original imposition of a sentence, a sentencing court should explain the basis for its decision on a § 3582(c)(1)(A) motion in sufficient detail for a reviewing court to ascertain the reasons underlying it. *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021) (citing *Jones*, 980 F.3d at 1106).

## Argument

This Court should deny Johnson's motion for compassionate release because he has not established that "extraordinary and compelling reasons" support a sentence reduction. In addition, Johnson has not demonstrated that a reduction is warranted in light of the relevant § 3553(a) factors.

**I.    Johnson Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.**

As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction, and that "such a reduction is consistent with [an] applicable policy statement[] issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), not foreclosed by statutory text, history, structure and purpose. *See Mayo Found. for Med. Educ. & Research*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

In this case, Johnson has asserted that he has a serious medical condition that requires "round the clock" medical care. (R.177-5, PageID.2018.) That claim is untrue, not supported by the medical records, and an exaggeration of his current actual physical condition. Johnson's motion and accompanying materials have not established "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and his motion cannot be granted.

First, Johnson's request to BOP staff in January 2024 for an immediate compassionate release recounts only two medical episodes: (1) the CABG x4 in the fall of 2023, which was successfully completed *before* reporting to the BOP; and (2) "internal bleeding" requiring a hospital procedure and blood transfusion at St. Luke's Hospital near FPC Duluth. (R.177-5: Inmate Request to Staff, PageID.2017-2018.)

With respect to the CABG, this Court previously considered and rejected Johnson's second motion to further delay self-surrender to the BOP so that he could receive physical therapy rehabilitation and recovery monitoring at home. (R.143: Order, PageID.1423.) The decision to require Johnson to report to BOP was correct because the record does not reflect that Johnson's CABG failed to adequately address the reduced blood flow observed in 2023. To the contrary, the medical records reflect that he has successfully recovered from his pre-incarceration CABG surgery. The reports indicate that Johnson tolerated the procedure well. (R.117-13, PageID.2060) and had a satisfactory surgical recovery with no need for additional cardiothoracic surgery. (R.177-13, PageID.2065.) The successful CABG was further confirmed on February 21, 2024, when an echocardiogram at St. Luke's indicated no abnormal

9

findings. (R.177-16, PageID.2190.) Johnson reported that he can walk 6-8 miles per day. (Gov. Ex. 4.) In short, Johnson has not demonstrated that he needs additional treatment related to his 2023 CABG or that any future treatment cannot effectively be administered by FPC Duluth or St. Luke's. In fact, the medical records demonstrate that Johnson is receiving a substantial amount of pulmonary monitoring care and blood pressure monitoring and treatment from both FPC Duluth and St. Luke's.

Second, Johnson attempted to blame this Court's denial of his motion to further delay reporting to BOP for a January episode of severe pain, shortness of breath, and internal bleeding. (R.177-5: Summary of Medical Condition, PageID.2018.) But the medical records demonstrate that Johnson suffered from a bleeding ulcer, which his medical team at St. Luke's determined was likely caused by routine NSAID use. The ulcer was successfully treated by St. Luke's. (R.177-16: BOP Clinical Encounter, PageID.2213-2215; Gov. Ex. 2.) Follow up tests and examinations found no evidence of new bleeding or other complications from the ulcer. (Id.)

The documented medical need that is not yet under control is Johnson's hypertension. (Gov. Ex. 5.) The records reflect that Johnson has experienced very high and, at times, variable blood pressure. However, BOP staff recently learned that Johnson may not have been taking all prescribed medications, possibly because he was confused by adjustments to his prescription regimen after his ulcer procedure. To remedy this issue, BOP staff recently placed Johnson on the "pill line" rather than rely on him to take all prescribed medications. (Gov. Ex. 6.) The medical records also

indicate that he has not been regularly using a CPAP machine to treat obstructive sleep apnea, a condition that also can contribute to hypertension and exhaustion. (Gov. Ex. 3.) Those two issues are Johnson's responsibility and are not a basis for finding extraordinary and compelling reasons to end Johnson's prison term.

Instead of presenting evidence of a terminal illness or a medical condition that substantially diminishes his ability to provide self-care at FPC Duluth and from which he is not expected to recover, Johnson merely states in conclusory fashion that "[m]y health continues to deteriorate, due to age …." (Id., PageID.2018.) Johnson points to nothing in the record demonstrating that BOP medical staff at FPC Duluth or the medical experts at St. Luke's are unable or unwilling to provide Johnson with the routine medical care he currently requires. To the contrary, Johnson has acknowledged that the BOP medical staff are "very professional" and "immediately sent [him] to St. Lukes for treatment" in January 2024. (R.177-5, Summary of Medical Condition, PageID.2018.) Although Johnson claims that he requires "round the clock" medical care, his motion does not demonstrate such a need and his medical records do not indicate a need for 24-hour a day medical treatment or monitoring. Johnson does not require assisted living, nor does he require assistance with self-care, such as bathing, walking, and using the toilet. (R.177-4: Proposed Release Plan, PageID.1985.) Johnson would have this Court believe that he's infirm and unable to care for himself in a prison setting, but he has a prison job where he vacuums without

11

discomfort and reported walking 6-8 miles per day. (R177-16, PageID.2221; Gov. Ex. 3.)

For all of those reasons, Johnson's motion and the supporting records fail to demonstrate "extraordinary and compelling reasons" warranting a sentencing reduction that would allow for his immediate release from prison. Instead, the record reflects that Johnson simply wishes to enjoy the privilege of "top of the line, health and medical benefits that will more than take care of [his] health problems" near his home in Michigan while enjoying the company of his wife, daughter, and friends. (R.177-5, PageID.2018.) Johnson has temporarily forfeited that privilege by virtue of his criminal behavior. Moreover, the medical records reveal that BOP and outside medical facilities like St. Luke's Hospital in Minnesota are well equipped to provide Johnson with the help he needs to better control his high blood pressure. Johnson has been receiving high quality medical care while imprisoned at FPC Duluth and there is no extraordinary and compelling need to release him from prison to allow him to receive treatment from the providers of his choosing near his home in Michigan.

## II.  The § 3553(A) Factors Weigh Against Johnson's Release.

Johnson has failed to demonstrate the § 3553(a) factors weigh in favor of his immediate release. This is an independent basis on which the Court may deny the motion. *Hampton*, 985 F.3d at 533.

Johnson was a state government official who accepted numerous bribes for which he has served very little of this Court's 55-month prison sentence. As this Court observed at sentencing, Johnson's abhorrent criminal conduct (including receiving

commercial sex paid for by bribe payers on multiple occasions) is a very serious crime with substantial harm to the functioning and legitimacy of our government. Public corruption strikes at the heart of our democracy. Johnson's actions reward corrupt bribe payers and harms honest, law-abiding citizens. And greedy corrupt politicians greatly diminish respect for governmental authority and decisions. Although this Court varied below the otherwise applicable Sentencing Guidelines range by two levels to account for the Sentencing Commission's impending retroactive application of the "zero-point offender" departure pursuant to Amendment 821 and USSG § 4C1.1, the Court did not vary below the advisory Guidelines range based on the 3553(a) factors.

Moreover, the First Step Act of 2018 and the Second Chance Act Home Confinement Pilot program[1] greatly expanded BOP's ability to move elderly inmates into home confinement. Consequently, the BOP now has the sole authority to release nonviolent low risk offenders to home confinement to finish their "custodial" sentence earlier than ever before without any review or approval by this Court or the United States Attorney's Office. Congress effectively empowered BOP administrators to allow older nonviolent "white collar" criminals like Johnson to serve significantly less time in prison than the period of incarceration imposed by federal district court judges. Given that Johnson has served only about 16% of this Court's sentence of

---

[1] Offenders who are not less than 60 years old and have served 2/3 of the term of imprisonment imposed by the Court are now eligible for "early" home confinement. *See* BOP Operations Mem., *Home Confinement under the First Step Act*, available at https://www.bop.gov/policy/om/001-2019.pdf

13

imprisonment, those factors weigh heavily against this Court granting his request for release from custody for reasons related to age and history of resolved medical issues.

To the extent Johnson seeks an order requiring BOP to place him on home confinement, that request should be denied because this Court has no authority to direct BOP to place a defendant in home confinement. Rather, as noted above, such designation decisions are committed solely to BOP's discretion. *See United States v. Spencer*, No. 20-3721, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020) (unpublished order) ("Section 3582(c)(1)(A) does not authorize the district court to order that a defendant serve his current sentence in home confinement.") (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011), which noted that the BOP has plenary control over the "place of ... imprisonment" (quoting 18 U.S.C. § 3621(b)).[2]

Johnson should serve his entire custodial sentence as punishment for his crime and to send a strong deterrent message to all public officials that bribery results in a *meaningful* deprivation of liberty. The rule of law demands it. This Court's 55-month custodial sentence reflected the Court's considered judgment on the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, provide just punishment, and afford adequate general deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2). Nothing material has changed since the Court imposed that sentence. Although neither this Court nor the U.S. Attorney's office has the power to

---

[2] If the Court disagrees with the government's argument that Johnson has not satisfied the criteria for a sentence reduction under § 3582(c)(1)(A), it should impose home confinement as a condition of his supervised release for the period he should have served in custody. *See Spencer*, 2020 WL 5498932, at *2.

14

prevent BOP from releasing Johnson to home confinement under the new authority granted to it by Congress under the First Step Act, this Court should exercise its current plenary authority to deny an even earlier release from custody.

Accordingly, based on the § 3553(a) factors, and the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

## Conclusion

This Court should deny Johnson's motion for a sentence reduction on the merits.

Dated:  September 12, 2024         Respectfully submitted,

                                   MARK A. TOTTEN
                                   United States Attorney

                                   /s/ *Christopher M. O'Connor*
                                   CHRISTOPHER M. O'CONNOR
                                   Assistant United States Attorney
                                   P.O. Box 208
                                   Grand Rapids, MI 49501-0208
                                   (616) 456-2404
                                   christopher.oconnor@usdoj.gov

## Certificate of Service

     I certify that on September 12, 2024, I electronically filed this document with the Clerk of Court using the CM/ECF system.  I also certify that I have caused a copy of this document to be deposited in the United States mail for delivery to the following address:

Rick Vernon Johnson (55930-510)<br>
FPC Duluth<br>
Federal Prison Camp<br>
P.O. Box 1000<br>
Duluth, MN  55814

                                          */s/Christopher M. O'Connor*
                                          CHRISTOPHER M. O'CONNOR
                                          Assistant United States Attorney